UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

B.C., individually and on behalf of C.C., a
child with a disability,

                              Plaintiff,

               – against –

NEW YORK CITY DEPARTMENT OF
EDUCATION,

                              Defendant.

**OPINION & ORDER**

21 Civ. 2840 (ER)

RAMOS, D.J.:

B.C., the parent of C.C., a minor with a disability, brings this action pursuant to the
Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415 *et seq*., to secure
attorneys' fees and costs following an impartial hearing officer's ("IHO") decision in her favor.
Before the Court is B.C.'s motion for summary judgment, seeking attorneys' fees and costs for
work performed by her attorneys, the Cuddy Law Firm, PLLC (the "Firm").  For the reasons set
forth below, the motion is GRANTED, subject to the modifications described herein.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying Administrative Hearing

The following facts are undisputed for purposes of summary judgment except as
otherwise stated.

B.C. is the parent of a child with disabilities, C.C.  Doc. 28 ¶ 1.  C.C. was born in 2003,
and was classified as a student with a disability by the New York City Department of
Education's Committee on Special Education, Doc. 1 ¶ 9, although defendants state that the
student is currently classified as a student with a speech/language impairment.  Doc. 29 ¶ 5.  On

March 7, 2019, B.C. filed a due process complaint and requested a due process hearing pursuant to the IDEA.  Doc. 29 ¶ 6.  The complaint alleged that the DOE had denied C.C. a free appropriate public education ("FAPE") as is required by the IDEA, during the 2017-18 and 2018-19 school years.  Doc. 23-1 at 1.  B.C. requested as relief:  a vocational assessment; funding or reimbursement for an independent neuropsychological evaluation up to $5,400; a reconvening of the Committee on Special Education ("CSE") for review of these evaluations; amendments to C.C.'s individualized education program such that it would include "social skills training transition activities"; placement in a New York State approved non-public school; and compensatory academic, speech-language, and counseling services.  *Id.* at 5–7.

In June of 2019, the DOE agreed to and authorized funding for the independent neuropsychological evaluation that B.C. had requested, and agreed to complete the vocational assessment, and to reconvene the CSE after these two evaluations were completed.  Doc. 1 ¶ 15; Doc. 35 at 7–8.  That same month, it reimbursed B.C. for the cost of the neuropsychological evaluation.  Doc. 25 at 1; Doc. 35 at 7.  On June 4, 2019, a written settlement partially resolving the case was signed by the parties.  Doc. 31 ¶ 7.

The DOE does not dispute that, on September 24, 2019, it indicated that it would not defend the issue of the FAPE, and the hearing scheduled to present its defense was canceled. Doc. 25 at 2.  The second hearing, scheduled for B.C. to present her claims for relief, was kept on the schedule.  *Id.*

The DOE appointed Vanessa Gronbach as the IHO.  Doc. 1 ¶ 14; Doc. 13 ¶ 14.  On November 22, 2019, IHO Gronbach held a hearing on the merits.  Doc. 1 ¶ 17; Doc. 13 ¶ 17.  To prepare for this hearing, the Firm prepared B.C.'s direct testimony, communicated with her to answer her questions, worked with expert witnesses to prepare an affidavit for B.C., prepared

documents, and prepared an opening statement.  Doc. 25 at 2.  At the hearing, B.C. submitted ten

exhibits into the record, including an affidavit from an expert witness attesting to the nature of

the compensatory services to which C.C. was entitled and C.C.'s need for an independent

vocational assessment.  Doc. 1 ¶ 18; Doc. 31 ¶ 8.  The DOE did not call any witnesses or present

any exhibits, but it also did not stipulate to the relief proposed by B.C.  Doc. 1 ¶ 19; Doc. 31 ¶ 8.

The DOE also was not represented by counsel at the hearing, but instead by a "non-attorney

representative."  Doc. 31 ¶ 8.

      IHO Gronbach issued a Findings of Fact and Decision on March 24, 2020.  Doc. 1 ¶ 20;

Doc. 13 ¶ 20.  She found that C.C. had been denied a FAPE, and granted relief to C.C., which

included:  funding by the DOE of a vocational assessment, 250 hours of compensatory academic

services, 46 hours of compensatory speech-language services, and 46 hours of compensatory

counseling services—the vast majority of what B.C. had sought in her complaint.  Doc. 23-2 at

8–9.  By the time of the hearing, the IHO stated that "the CSE had already reconvened."  Doc.

23-2 at 3.  The Court notes that "[t]he DOE does not dispute that [B.C.] is entitled to recoup

attorneys' fees and costs as the prevailing party in . . . the underlying administrative

proceedings"; that is, that B.C. was the prevailing party here.  Doc. 35 at 1.

      On November 30, 2020, B.C. submitted an attorney's fee demand to the DOE, pursuant

to the IDEA, requesting payment of $31,009.57 for the underlying administrative proceedings.

Doc. 25 at 3; Doc. 22 ¶ 30; Doc. 31 ¶ 13.  In March of 2021, the DOE presented a settlement

offer to the Firm, which it rejected.  Doc. 22 ¶ 32; Doc. 31 ¶ 14.

**B. Action to Recover Attorneys' Fees in Federal Court**

      B.C. filed this complaint on April 2, 2021 in order to compel the DOE to pay reasonable

attorneys' fees and costs pursuant to 20 U.S.C. § 1415(i)(3).  Doc. 1.  The DOE answered the

complaint on August 3, 2021.  Doc. 13.  On November 9, 2021, B.C. filed the instant motion for summary judgment.  Doc. 18.  The DOE does not dispute that, based on the findings of the IHO, B.C. was the prevailing party in the administrative proceeding and is entitled to attorneys' fees and costs.  Doc. 35 at 1.  However, the DOE argues that the rate sought and the number of hours billed, as well as the costs, are unreasonable.  *Id*.  After discretionary reductions, the Cuddy Law Firm has billed 84 hours in connection with the underlying administrative proceedings, as well as 31.50 hours in connection with this federal action, resulting in a combined $46,074.07 in overall fees, costs, and expenses.  Doc. 22-1; Doc. 36-1.

## II.    LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id*.  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the non-moving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### B.  Reasonable Attorneys' Fees

"In any action or proceeding brought under [§ 1415], the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability."  20 U.S.C. § 1415(i)(3)(B)(i)(I).  "A plaintiff prevails when actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."  *K.L. v. Warwick Valley Cent. Sch. Dist.*, 584 F. App'x 17, 18 (2d Cir. 2014) (internal citation and quotation marks omitted).

"Reasonable attorneys' fees under the IDEA are calculated using the lodestar method, whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate."  *Streck v. Bd. of Educ.*, 408 F. App'x 411, 415–16 (2d Cir. 2010) (citations and quotation marks omitted).  In determining whether an hourly rate is reasonable, courts primarily consider the prevailing market rates in the community for comparable legal services.  *See* § 1415(i)(3)(C) (providing that attorneys' fees "shall be based

on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished").  The prevailing market rate has been characterized as "the rate a paying client would be willing to pay . . . bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2007).  Courts also consider the 12 factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Lilly v. City of New York*, 934 F.3d 222, 228 (2d Cir. 2019).  Because "the determination of fees should not result in a second major litigation," *Fox v. Vice*, 563 U.S. 826, 838 (2011), courts may consider the *Johnson* factors holistically rather than applying each factor individually to the facts of the case.  *V.W. v. New York City Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *3 (S.D.N.Y. Jan. 4, 2022) (internal citation omitted).  "A district court need not recite and make separate findings as to all twelve Johnson factors, provided that it takes each into account in setting the attorneys' fee award." *H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *8 (S.D.N.Y. Feb. 25, 2022) (quoting *E.F. ex rel. N.R. v. New York City Dep't of Educ.*, No. 11 Civ. 5243 (GBD) (FM), 2014 WL 1092847, at *3 (S.D.N.Y. Mar. 17, 2014)).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Henlsey v. Eckerhart*, 461 U.S. 424, 437 (1983).  The Second Circuit has observed that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation

available under [§ 1415] and compensation available in the marketplace," which would "undermine[ ] [the statute's] central purpose of attracting competent counsel to public interest litigation." *Farbotko v. Clinton County*, 433 F.3d 204, 209 (2d Cir. 2005). Accordingly, while a court may consider rates awarded in prior similar cases and its "familiarity with the rates prevailing in the district," it should also "evaluat[e] . . . [the] evidence proffered by the parties." *Id*.

### III.   DISCUSSION

#### A.  Reasonable Rate

The Firm seeks a total of $46,074.07 in overall fees, costs, and expenses. This figure includes a total of $32,007.07 for the underlying administrative proceeding, and $14,067 for the instant federal action. Plaintiff requests an hourly rate of $550 per hour for Andrew Cuddy and Jason Sterne, senior attorneys at the Firm; $450 per hour for Kevin Mendillo, the lead attorney on the case, and $225 per hour for his travel time; $400 for junior attorney Benjamin Kopp; and $225 per hour for paralegals Allison Burnell, Amanda Pinchak, Cailin O'Donnell, Khrista Smith, Shobna Cuddy, and Sarah Woodard. Doc. 24 ¶¶ 26–27. The Court finds these rates unreasonable.

In opposition, the DOE asserts that the awards requested here significantly exceed prevailing rates for similar cases, and cites to various similar IDEA cases where courts in this district have awarded hourly rates below those requested by the Firm. The DOE argues that the rates should be set no higher than $350 per hour for A. Cuddy and Sterne, $275 per hour for Mendillo, and $100 per hour for the paralegals. Doc. 35 at 3.

The prevailing market rate for experienced, special-education attorneys in the New York area in 2018 was between $350 and $475 per hour. *R.G. v. New York City Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y Sept. 26, 2019) (awarding $350 rates to

senior attorneys who have practiced IDEA law since 2005).  Rates for the Firm from 2019 to

2022 specifically, as demonstrated by the cases cited below, range from $350 to $550 per hour.

Courts in this district have recognized that the passage of time may justify somewhat higher rates

for the same type of work performed by the same senior attorneys.  *See, e.g.*, *M.H. v. New York

City Dep't of Educ.*, No. 20 Civ. 1923 (LJL), 2021 WL 4804031, at *12 (S.D.N.Y. Oct. 13,

2021) ("The Court may consider the passage of time, [and] the increase in fees that may come

with such passage of time."); *C.D. v. Minisink Valley Cent. Sch. Dist.*, No. 17 Civ. 7632 (PAE),

2018 WL 3769972, at *6 (S.D.N.Y. Aug. 9, 2018).  The Firm argues that the rates awarded to its

attorneys have stagnated in recent years, and asserts that the passage of time justifies that it be

awarded higher rates going forward.  *See* Doc. 25 at 15–16.

The determination of appropriate rates for the Firm's attorneys "is well trodden ground in

this District."  *K.O. v. New York City Dep't of Educ.*, No. 20 Civ. 10277 (LJL), 2022 WL

1689760, at *9 (S.D.N.Y. May 26, 2022).  Indeed, the Cuddy Law Firm has brought no fewer

than twenty federal fees cases in this district since 2018, litigating the rates that they assert they

are entitled to charge.  Ten of those cases have been brought in 2022 alone.  Describing a

"current stalemate" between the Firm and the DOE, Judge Liman notes that both parties have

adopted a "Manichean" view of the IDEA administrative process that has led the Firm to

repeatedly request "aspirational hourly rates that no court has awarded," while the DOE, in turn,

has elected to play "hardball" and refuse settlement.[1]  *D.P. v. New York City Dep't of Educ.*, No.

---

[1] In multiple cases where the Firm and the DOE were able to reach a settlement, the DOE has failed to make a
timely payment to satisfy the terms of the settlement agreement.  *See C.S. v. New York City Dep't of Educ.*, 19 Civ.
11419 (CM) (GWG), 2021 WL 1851366 (S.D.N.Y. Apr. 8, 2021) (ordering that the DOE pay interest to the Cuddy
Law Firm after it was late making payment to satisfy a settlement agreement the parties had reached to resolve a
federal fees lawsuit); *D.M. v. New York City Dep't of Educ.*, 19 Civ. 1477 (ER), 2021 WL 4441508 (S.D.N.Y. Sept.
28, 2021) (same).

21 Civ. 27 (KPF), 2022 WL 103536, at *6 (S.D.N.Y. Jan. 10, 2022).  Under these circumstances, the rates awarded to the Firm have varied depending on the facts of each case; for A. Cuddy, the hourly rate determined to be reasonable has ranged from $350 an hour to $550 an hour at the high end.  *K.O.*, 2022 WL 1689760, at *9.  The Firm has been awarded its requested rate of $550 an hour for A. Cuddy in only one case, however.  *Y.G. v. New York City Dep't of Educ.*, No. 21 Civ. 641 (AKH), 2022 WL 1046465 (S.D.N.Y. Apr. 7, 2022).  In other decisions issued in 2022, A. Cuddy has generally receiving an hourly rate between $360 and $420 per hour.  *See V.W.*, 2022 WL 37052; *D.P. v. New York City Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536, at *1 (S.D.N.Y. Jan. 10, 2022); *S.H.*, 2022 WL 254070; *L.L. v. New York City Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912 (S.D.N.Y. Feb. 9, 2022); *H.W. v. New York City Dep't of Educ.*, No. 20 Civ. 10591 (RA), 2022 WL 54137 (S.D.N.Y. Feb. 23, 2022); *H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772 (S.D.N.Y. Feb. 25, 2022); *N.G.B. v. New York City Dep't of Educ.*, No. 20 Civ. 6571 (JGK), 2022 WL 800855 (S.D.N.Y. Mar. 16, 2022); *R.P. v. New York City Dep't of Educ.*, No. 21 Civ. 4054 (JMF), 2022 WL 1239860, at *4 (S.D.N.Y. Apr. 27, 2022); *K.O.*, 2022 WL 1689760, at *9.  Sterne has received similar hourly rates in recent cases, with awards generally ranging between $360 an hour, *L.L*, 2022 WL 392912, at *3, and $420 an hour, *M.H.*, 2021 WL 4804031, at *13.  For other individuals within the Firm, past decisions contain a range of reasonable rates for midlevel and junior associates, from $400 for an attorney with approximately 4 years of experience, to $300 or $280 in other cases, to $200 at the low end.  *See*, *e.g.*, *Y.G.*, 2022 WL 1046465; *L.L*, 2022 WL 392912; *M.H.*, 2021 WL 4804031.  Paralegals, depending on their particular attributes, have generally received an hourly rate between $100 and $125.  *R.G.*, 2019 WL 4735050, at *3 (collecting cases).

In 2021, there were six attorneys' fees actions in this district involving the Firm, and none awarded over $420 per hour for A. Cuddy.  *See A.G. v. New York City Dep't of Educ.*, No. 20 Civ. 7577 (LJL), 2021 WL 4896227, at *6 (S.D.N.Y. Oct. 19, 2021) (awarding $420); *M.H.*, 2021 WL 4804031, at *13 (awarding $420); *J.R. v. New York City Dep't of Educ.*, No. 19 Civ. 11783 (RA), 2021 WL 3406370, at *4 (S.D.N.Y. Aug. 4, 2021) (awarding $350); *M.D. v. New York Dep't of Educ.*, No. 20 Civ. 6060 (LGS), 2021 WL 3030053, at *3 (S.D.N.Y. July 16, 2021) (awarding $375); *H.C. v. New York City Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195, at *6 (S.D.N.Y. June 17, 2021) (awarding $360); *S.J. v. New York City Dep't of Educ.*, No. 20 Civ. 1922 (LGS), 2021 WL 100501, at *3 (S.D.N.Y. Jan. 12, 2021), *modified*, No. 20 Civ. 1922 (LGS), 2021 WL 536080 (S.D.N.Y. Jan. 25, 2021), *aff'd*, No. 21 Civ. 240, 2022 WL 1409578 (2d Cir. May 4, 2022), *and aff'd*, No. 21 Civ. 240, 2022 WL 1409578 (2d Cir. May 4, 2022) (awarding $360).  In four cases from 2018 and 2019, the Firm was awarded no more than $400 per hour.  *See R.G. v. New York City Dep't of Educ.*, No. 18 Civ. 6851 (VEC), 2019 WL 4735050, at *2 (S.D.N.Y. Sept. 26, 2019) (awarding $350); *C.B. v. New York City Dep't of Educ.*, No. 18 Civ. 7337 (CM), 2019 WL 3162177, at *6 (S.D.N.Y. July 2, 2019) (awarding $400); *M.D. v. New York City Dep't of Educ.*, No. 17 Civ. 2417 (JMF), 2018 WL 4386086, at *3 (S.D.N.Y. Sept. 14, 2018) (awarding $360); *C.D*, 2018 WL 3769972, at *6 (awarding $400).

To support its request, B.C. cites to *Y.G.*, where Judge Hellerstein awarded A. Cuddy his requested rate of $550 per hour.  2022 WL 1046465.  This case is alone in granting A. Cuddy $550, and is the only case in the last three years that has awarded Cuddy over $420 per hour for his work.  *See H.A. v. New York City Dep't of Educ.*, No. 20 Civ. 10785 (PAE), 2022 WL 580772, at *6 (S.D.N.Y. Feb. 25, 2022) (awarding A. Cuddy $375 per hour); *L.L. v. New York City Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912, at *3 (S.D.N.Y. Feb. 9, 2022)

(awarding only $360); *S.H. v. New York City Dep't of Educ.*, No. 21 Civ. 4967 (LJL), 2022 WL
254070, at *6 (S.D.N.Y. Jan. 26, 2022) (again awarding $420); *D.P. v. New York City Dep't of
Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536, at *15 (S.D.N.Y. Jan. 10, 2022) (awarding
$400); *V.W. v. New York City Dep't of Educ.*, No. 20 Civ. 2376 (RA), 2022 WL 37052, at *7
(S.D.N.Y. Jan. 4, 2022) (awarding $400).   In *Y.G.*, Judge Hellerstein acknowledged that the
Firm's requested rates were "higher than other district courts have allowed."   2022 WL 1046465,
at *2.   However, the award of relatively higher hourly rates in *Y.G.* was premised in part on the
fact that the underlying administrative proceeding was "heavily contested and required the skill
of an experienced IDEA litigator to prevail, as there were multiple days of hearings and five
hearings on the merits."   *Id*.   Here, the underlying proceeding involved only one hearing on the
merits.   The undisputed evidence also indicates that the underlying administrative proceedings in
this matter were likely not as heavily contested as the proceedings in *Y.G*, as the parties had
already reached a partial resolution agreement prior to the hearing, meaning the issues at stake in
the hearing were limited.   *See H.A.,* 2022 WL 580772, at *8 (finding that the underlying
litigation was relatively straightforward since the DOE only objected to an aspect of plaintiff's
remedial plan and did not contest liability).

In *K.O.*, which was decided after *Y.G.* in May of this year, Judge Liman awarded A.
Cuddy a rate of $420, reduced from his requested $550, because this aligned with rates granted
in similar cases, and because this rate was consistent with his seniority, the complexity of the
case, and the *Johnson* factors.   2022 WL 1689760, at *9.   The Firm's partners have been
awarded similar rates in several other recent cases.   *See*, *e.g.*, *M.H.,* 2021 WL 4804031, at *13–
14 (awarding $420 per hour to A. Cuddy and Sterne); *S.H.*, 2022 WL 254070, at *6 (awarding
$420 per hour to A. Cuddy and $400 per hour to Sterne); *A.G.*, 2021 WL 4896227, at *6 (same);

*C.B.,* 2019 WL 3162177, at *8 (awarding $400 per hour to A. Cuddy and J. Sterne); *C.D.*, 2018 WL 3769972, at *6 (same).

The Court is mindful of the fact that "a reasonable hourly rate is not [solely] ascertained simply by reference to rates awarded in prior cases." *Farbotko*, 433 F.3d at 208 (internal quotation marks and citations omitted). Rather, the rate must by determined with reference to "similar services by lawyers of reasonably comparable skill, experience, and reputation." *Id*. at 210. In making its calculation by analyzing the multitude of cases involving this Firm specifically—indeed, most of the cases even involve the same attorneys—the Court ensures that it keeps this determination in mind. Further, B.C. and the Firm point out that A. Cuddy and other attorneys from the Firm have been awarded similar awards over multiple years, arguing that judges in this district "fail[] to account for" inflation, and that using rates established in years past "may create disparity" between compensation available under 20 U.S.C. § 1415 and compensation available on the marketplace. Doc. 25 at 16; *Farbotko*, 433 F.3d at 209. However, the DOE is correct in its rebuttal that "the majority of . . . Southern District cases were issued in recent months" and analyzed recent trends in legal fees, and the Court bases its analysis on these cases. Doc. 35 at 11.

The Court has evaluated the evidence proffered by the parties, but it was less instructive than the similar cases in determining an appropriate award.[2] Indeed, many of the documents

---

[2] The Firm cites to practitioner declarations filed in other lawsuits. Doc. 25 at 12. Those declarations purportedly "demonstrate the common fee per hour of attorneys and support staff in SDNY." *Id.* The Court declines to rely on these materials. First, in the cases in which those declarations were filed, the courts expressly rejected the probative value of the declarations. *See, e.g.*, *G.T. v. New York City Dep't of Educ.*, No. 18 Civ. 11262 (GDB) (BCM), 2020 WL 1516403, at *4 (S.D.N.Y. Feb. 12, 2020) (finding "the declarations submitted by plaintiff's counsel to be unpersuasive" and noting that "district courts have generally decided not to rely heavily [on such] affidavits, since they may only 'provide isolated examples of billing rates of a few lawyers,' may leave out context that rationalizes the rates billed, and may even list rates that are not in practice ever paid by reasonable, paying clients") (internal quotation marks and citations omitted)); *A.D. v. New York City Dep't of Educ.*, No. 18 Civ. 3347 (VEC), 2019 WL 1292432, at n. 4 (S.D.N.Y. Mar. 21, 2019) (finding nothing in the declarations that have been cited in this case by B.C. that would justify a higher rate). Second, courts in this district have determined that these types of affidavits

B.C. submitted have failed to substantiate the reasonableness of her requested fees.  For example,
B.C. submitted a spreadsheet of several years of statistics indicating at what hourly rates the
DOE has settled past attorneys' fees cases.  Doc. 20-3.  The list includes approximately several
thousand entries of matters, ranging from 2009 to 2018.  It includes dozens of different firms,
ranging from solo practitioners to the Firm itself to large firms like Kirkland and Ellis, and
details whether the case settled or had an IHO hearing, the name of the firm, the hourly rate
sought and hours claimed, and the total amount in fees that the firm was given.  None of this data
is analyzed or summarized by B.C. in any depth.  Moreover, the rates predictably vary.  Many
entries do, however, fall within the range of $350 to $500.  Therefore, they are consistent with
the rates typically awarded in similar cases in this district.  B.C. also submitted an agreement
between the New York City Law Department ("Law Department") and Hoguet, Newman, Regal
& Kenny, LLP ("Hoguet") to perform legal services related to DOE cases.  Doc. 22-4.  In the
agreement, the Law Department agreed to pay Hoguet $400 per hour for partners, $300 per hour
for associates, and $100 per hour for paralegals.  These figures do not substantiate the
reasonableness of the Firm's requested fees; instead, the fees paid by the DOE to Hoguet are
substantially similar to the typical fees awarded to plaintiff's attorneys by courts in this district.

In addition, B.C. submitted retainer agreements with ten other clients of the Firm, which
allegedly demonstrate that reasonable clients are willing to pay B.C.'s requested hourly rates.
Docs. 21-2–11.  The retainer agreements do not indicate the novelty and difficulty of the
questions raised, the level of skill required, any relevant time limitations imposed by the client,
or the results obtained in those cases.  Moreover, many of these agreements "explicitly did not
cover IDEA-related due process hearings."  *C.B.*, 2019 WL 3162177, at *7 (rejecting the

---

are generally of "limited value."  *H.C. v. New York City Dep't of Educ.*, No. 20 Civ. 844 (JLC), 2021 WL 2471195,
at n. 5 (S.D.N.Y. June 17, 2021)

probative value of the retainer agreements submitted by the Firm, in part because many of the agreements did not involve representation at due process hearings); *see, e.g.,* Doc. 21-2.  In fact, Adrienne Arkontaky only identifies one enclosed retainer agreement that pertains to a representation request for a special education due process hearing.  Doc. 21 ¶ 26; 21-4.  B.C. did, however, submit other materials that detail the experience, credentials, and typical hourly rates of its attorneys.  For example, she submitted declarations from A. Cuddy attesting to his own extensive experience, as well as the unique skill and expertise of the Firm's staff.  Doc. 22. Mendillo also submitted a declaration to a similar effect.  Doc. 23.

After reviewing these materials, considering the *Johnson* factors, and looking to similar judicial decisions within this district, the Court is compelled to settle on a fee award in between both parties' requests.  While several of the *Johnson* factors weigh in the Firm's favor, other factors do not.  Here, the award is clearly aligned with awards in similar cases, as addressed above.  Second, the results were clearly favorable for B.C., which "further argue[s] for a fee higher than that proposed by" the DOE.  *K.O.*, 2022 WL 689760, at *10.  The Firm took on the case on a contingency basis and therefore was not guaranteed any payment.  *Id*.  These factors indicate that the Firm should not be paid the much lower rates of $350 per hour and below that the DOE suggests.  On the other hand, as in *K.O.*, "the questions presented were not particularly novel or complex."  *Id*.  As the first section of this opinion makes clear, the Firm has been involved in dozens of similar cases.  Furthermore, the DOE did not object to many of B.C.'s requests, did not call any witnesses, and did not argue at the hearing that C.C. had been given a FAPE.  The DOE was not even represented by counsel at the IHO hearing.  Doc. 31 ¶ 8.  The Court's award is in line with the *Johnson* factors, which reflect that level of work, and in line with the awards handed down by other Courts in this District.

14

After considering these factors and looking to similar judicial decisions within this district, the Court will award A. Cuddy and Sterne a rate of $420 per hour.  A. Cuddy has practiced for over 20 years in the field of special education law and is the founder and principal of the firm, which has offices in several different cities.  Doc. 22 ¶ 11.  Sterne likewise has over 20 years of professional experience as an attorney, including approximately 17 years with the Firm.  He specializes in special education law, and has substantial experience providing legal representation in IDEA administrative hearings.  *Id.* ¶ 14.

Courts have awarded different rates to Mendillo, depending on whether he was a lead attorney on the case.  *See H.C.*, 2021 WL 2471195, at *5 (noting that "[t]he appropriate hourly rate for [Firm] attorneys has been litigated many times," and awarding Mendillo $300 per hour). Here, since Mendillo was the lead attorney on the case, the Court awards him a rate of $300 per hour.  Mendillo has practiced in the area of special education for over seven years, and has litigated approximately 100 administrative hearings and nearly 30 federal fee cases, a level of experience that justifies this rate.  Doc. 22 ¶ 13.  As for his travel costs, the Court abides by recent decisions and "assigns a $150 hourly rate for Mendillo's travel time."  *H.C.*, 2021 WL 2471195, at *5; *see also L.L.*, 2022 WL 392912, at *3 ("[t]he Court also concludes that . . . [Mendillo's] hourly rate for travel . . . should be . . . reduced to $150 per hour").

In the updated billing statement submitted by the firm, Kopp is included as having spent 0.7 hours on this litigation.  He requests a fee of $400.  As he is also an associate at the firm, he will receive a fee of $300.

All paralegals will receive an hourly rate of $125.  This is consistent with the hourly rates broadly recognized for paralegals within this district.  *R.P.,* 2022 WL 1239860, at *4 (quoting *R.G.*, 2019 WL 4735050) (awarding $100 and $125 to Firm paralegals).

### B.  Reasonable Hours

The Court may reduce the number of hours for which recovery is granted if it finds it cannot credit the prevailing party's "representations that a certain number of hours were usefully and reasonably expended."  *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994).  Here, the Firm's billed hours are greater than what the Court would expect an attorney to reasonably spend on this case.[3]

First, as noted by the DOE, the Firm's "motion papers in this case are in many respects identical to [its] motion papers submitted in other fee applications recently briefed."  Doc. 35 at 18.  For example, the Firm billed 1.7 hours by Mendillo to draft the four-page complaint they filed in the instant case, over one page of which consists of "boiler-plate language nearly identical to complaints submitted in other cases over the past year."  Doc. 35 at 18, 21.  The DOE also complains that the Firm over-billed for tasks such as drafting simple, boilerplate motions, preparing the summons and civil cover sheets in this action, and filing the documents on the S.D.N.Y. online filing system, all activities that the DOE asserts should have taken mere minutes.  Doc. 35 at 17–27.

The DOE also notes that Mendillo wrote in his declaration that he spent 3.9 hours and that Cuddy spent 0.4 hours in drafting and preparing two exhibits, though the exhibits did "little more than recite the procedural history of the case."  Doc. 35 at 23.

The Firm overbilled in its preparation for the IHO hearing, too.  For example, the firm billed 10.8 hours to draft the due process complaint, although it was only seven pages long.  Mendillo additionally billed 6.8 hours reviewing documents before the complaint was drafted,

---

[3] The Court also notes that in each of the aforementioned cases it cites involving the Firm, the hours were reduced to some extent.  Even in *Y.G.*, 2022 WL 1046465, at *3, Judge Hellerstein reduced the hours billed as travel time by 70%.

and a paralegal billed 5.2 hours to do the same.  Doc. 35 at 24.  As for the hearing itself, which lasted only 40 minutes, and in which the DOE was not represented by an attorney, Mendillo billed 6.7 hours of preparation time.  *Id*.  While the Court appreciates that the "administrative hearing required [B.C.'s] counsel to perform multiple tasks," and that diligent preparation is obviously vital when attending a hearing, it finds that the proportion of time billed to the client to time spent in the hearing is high.  Doc. 25 at 22.  For a *contested* hearing, courts in this district have reasoned that roughly six hours of preparation for every one hour of hearings is appropriate. *See C.B.*, 2019 WL 3162177, at *10–11 (reducing hours billed by 15% in order to reach a ratio of six hours of preparation to one hour of proceedings); *c.f. Y.G.*, 2022 WL 1046465, at *3 (reasoning that "a ratio of 20 preparation hours to 8 hours of hearing time is well within a reasonable range").  Mendillo spent approximately the same amount of time for this hearing, which was uncontested in significant part.

 The same is true when it comes to hours billed for administrative tasks, such as the 4.8 hours billed to produce the 26-page administrative billing statement, including over two hours billed by A. Cuddy himself.  Again, while it is certainly incumbent upon the Firm to ensure that its billing statement is accurate, there is no compelling reason for this task to take almost five hours.  *See R.G*, 2019 WL 4735050, at *4 (reducing the time billed reviewing a billing statement from 2.8 to 1.5 hours because the "DOE should not have to compensate Plaintiff's counsel for administrative clean-up of their own entries").

While the Court finds that the Firm over-billed in the particular ways described above, the Court is not persuaded by the DOE's suggestion that it cut the Firm's billed hours by 80% by "extrapolat[ing its] grossly excessive billing practices across all of [the Firm's] billing entries." Doc. 35 at 18.  "Rather than engage in a painstaking line-item review of each billing entry, in

calculating an appropriate reduction of compensable hours '[a] district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application.'" *M.D*, 2018 WL 4386086, at *4 (quoting *McDonald ex rel. Prendergast v. Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).  Courts in this district have applied this strategy numerous times, generally reducing excessive fees by 20% to 50%. *See, e.g.*, *V.W.*, 2022 WL 37052, at *6 (reducing 86.6 hours spent in an administrative action that was not complex by 20%); *see also J.R.*, 2021 WL 3406370, at *4–5 (reducing 110.6 hours billed in a comparable administrative action by 20%).

"Notably, recent cases in this district have reduced the hours that [the Firm] spent litigating attorney's fees between twenty-five percent to fifty percent."  *R.P.*, 2022 WL 1239860, at *7.  Where a court determines that attorneys have spent excessive time on relatively straightforward legal tasks, it is appropriate to reduce the award by a significant percentage.  *See, e.g.*, *R.G.*, 2019 WL 4735050, at *5 (reducing the  Firm's hours spent litigating attorney's fees by approximately 26%, because the brief "discusse[d] no novel questions and contain[ed] approximately five pages [out of 30] of boilerplate language"); *J.R.*, 2021 WL 3406370, at *6 (reducing the Firm's time by 25% for its straightforward motion for attorney's fees); *M.D.*, 2021 WL 3030053, at *6 (reducing the Firm's 76.2 hours spent on federal litigation by 50% due to the "low degree of complexity"); *L.L. v. New York City Dep't of Educ.*, No. 20 Civ. 2515 (JPO), 2022 WL 392912, at *5 (S.D.N.Y. Feb. 9, 2022) (reducing the Firm's hours spent on a similar summary judgment motion by roughly half).

In light of the straightforward nature of this federal action, the Court concludes that a 25% reduction is reasonable.  For the underlying administrative action, the Court concludes that

a 20% reduction is reasonable.  These reductions are considerable and reflect the Court's view

that some of the hours billed by the Firm were excessive.

### C.  Costs

The Firm requests compensation for expenses totaling $1214.07.  This includes $402 for

filing this lawsuit, $34 for faxing costs, $236.78 for lodging, $49.53 for meals, $290 for mileage,

$60 for parking, $0.76 for postage, $129.50 for printing, and $11.50 for tolls.  Doc. 22-1; Doc.

36-1.

The billing statement submitted by the Firm for the underlying administrative action

shows that it charged 50 cents per page for printing.  *See, e.g.*, Doc. 22-1 at 23.  This figure will

be reduced to 10 cents per page.  This is consistent with prevailing practices in this district.  *See,*

*e.g.*, *R.G.*, 2019 WL 4735050, at *6 (reducing printing costs from 50 cents to 10 cents per page).

B.C. may not charge for faxing costs.  *See R.P.*, 2022 WL 1239860, at *7 ("the Court

finds, in line with other courts in this District, that the Firm's request for fax reimbursement is

unreasonable"); *D.P. v. New York City Dep't of Educ.*, No. 21 Civ. 27 (KPF), 2022 WL 103536,

at *15 (S.D.N.Y. Jan. 10, 2022) (same).  Additionally, "[a]n award of lodging expenses is not

warranted."  *M.D.*, 2021 WL 3030053, at *6 (citing *C.D.*, 2018 WL 3769972).  The costs

associated with meals will be reduced by 50%.  *See C.D.*, 2018 WL 3769972, at *13 (reducing

costs for meals by 70%).  Mileage costs will also be reduced by 50%.  *Id.*

The Firm billed excessively in its travel hours.  Mendillo billed ten hours for travel

between Auburn, New York, and Brooklyn, New York for the IHO hearing.  Doc. 22-1 at 1.  The

Court notes that in *M.D.*, Judge Schofield completely disallowed travel awards, since "it is

doubtful that a reasonable client would retain an Auburn or Ithaca attorney over a New York

City attorney if it meant paying New York City rates and an additional five hours in billable time

for each trip."  2021 WL 3030053, at *5 (citing *K.F. v. New York City Dep't of Educ.*, No. 10

Civ. 5465 (PKC), 2011 WL 3586142, at *6 (S.D.N.Y. Aug. 10, 2011)).  In other cases, however,

lawyers from the Firm have been allowed to bill up to one hour each way for their trips.  *See*

*J.R.*, 2021 WL 3406370, at *6 (allowing another Firm attorney to bill for no more than one hour

of travel time each way for trips to New York City); *see also S.J.*, 2021 WL 100501 (same).  The

Court will grant Mendillo one hour of travel each way, for a total of two hours.

### D.  CONCLUSION

The Court grants B.C.'s motion for attorneys' fees and costs with the modifications to

hourly rates, billable hours, and expenses detailed above.  Thus, for the underlying

administrative proceedings, the hours and rates for each attorney and paralegal result in the

following fees:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Andrew Cuddy, Esq. | $420 | 2.7 | $1,134 |
| Jason Sterne, Esq. | $420 | 1 | $420 |
| Kevin Mendillo, Esq. | $300 | 49.3 | $14,790 |
| Kevin Mendillo, Travel | $150 | 2 | $300 |
| Allison Bunnell | $125 | 2.8 | $350 |
| Amanda Pinchak | $125 | 6 | $750 |
| Khrista Smith | $125 | .5 | $62.5 |
| Cailin O'Donnell | $125 | 8 | $1,000 |
| Shobna Cuddy | $125 | 2.7 | $338 |
| Sarah Woodard | $125 | 1 | $125 |

The hours and rates for each attorney and paralegal in connection with this federal action result in the following fees:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| Andrew Cuddy, Esq. | $420 | 2.90 | $1,218 |
| Kevin Mendillo, Esq. | $300 | 24.50 | $7,350 |
| Benjamin Kopp, Esq. | $300 | 0.7 | $210 |
| Shobna Cuddy | $125 | 2.70 | $337.50 |
| ChinaAnn Reeve | $125 | 0.7 | $88 |

Therefore, prior to any discretionary reductions, B.C. is due $19,269.50 for the underlying administrative action and $9,203.50 for this federal action. After reductions, B.C. is due 15,415.60 for the underlying administrative action and $6,902.63 for this federal fees case.

As stated above, for costs, the Firm may bill $402 for filing this lawsuit, $25.90 for printing, $11.50 for tolls, $24.77 for meals, $145 for mileage, $60 for parking, and $0.76 for postage, which amount to total costs of $669.93.

Accordingly, B.C. is entitled to a combined total of $22,988.16. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 18, enter judgment, and close the case.

It is SO ORDERED.

Dated:    August 9, 2022
          New York, New York

_____
          Edgardo Ramos, U.S.D.J.